## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Benjamin C. Wallace, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I have been employed as a Special Agent with the FBI since 2009.  Before joining the FBI, I was a Special Agent with the United States Secret Service ("USSS") for approximately four years.  Before that, I worked as a police officer with the City of Atlanta, Georgia Police Department for approximately five years.

2.      I am currently assigned as the Airport Liaison Agent Coordinator at Boston Logan International Airport (BOS), where I investigate violations of federal law in the airport environment and onboard aircraft.  In my capacity as an Airport Liaison Agent, I work with other law enforcement agencies at BOS, including the Massachusetts State Police (MSP) and Federal Air Marshal Service (FAMS).

3.      I make this affidavit in support of a criminal complaint charging Praneeth Kumar USIRIPALLI ("USIRIPALLI"), YOB 1997, with assault with a dangerous weapon with intent to do bodily harm, while traveling on an aircraft in the special aircraft jurisdiction of the United States, in violation of 49 U.S.C. §46506(1) and 18 U.S.C. § 113(a)(3).

4.      I am aware that, under 49 U.S.C. 46501(2)(D), special aircraft jurisdiction of the United States applies to an aircraft in flight that is "another aircraft outside the United States (i) that has its … last place of departure in the United States, if the aircraft next lands in the United States; (ii) on which an individual commits an offense … if the aircraft lands in the United States with the individual still on the aircraft."  An "aircraft in flight" is defined in Section 46501(1)(A) of Title 49 as an aircraft from the moment all external doors are closed following boarding through the moment when one external door is opened to allow passengers to leave the aircraft.

5.      I am also aware that 49 U.S.C. § 46506 makes it unlawful for any individual on an aircraft in the special jurisdiction of the United States to commit assault with a dangerous weapon, with intent to do bodily harm, an act that would violate 18 U.S.C. § 113(a)(3).

6.      The facts in this affidavit come from my personal involvement in this investigation, interviews of witnesses, including crew members and passengers, as well as my conversations with other members of law enforcement and my review of records.  In submitting this affidavit, I have not included every fact known to me about this investigation.  Instead, I have only included facts that I believe are sufficient to establish probable cause.

## PROBABLE CAUSE

7.      On October 25, 2025, while onboard Lufthansa Flight 431 en route from Chicago, Illinois to Frankfurt, Germany, USIRIPALLI stabbed a seventeen-year-old male passenger ("Minor A") in the shoulder area with a metal fork.  USIRIPALLI then stabbed a second seventeen-year-old passenger ("Minor B") in the back of the head with the same metal fork.  According to Lufthansa, USIRIPALLI was assigned to and seated in seat 43C.

8.      Flight 431 departed Chicago, Illinois at approximately 4:30 p.m. Central Time with 273 passengers and 12 crew on board.  Approximately two hours into the flight, while flying in Canadian airspace, the Pilot in Command[1] of the aircraft was notified by the flight crew of a disturbance on-board caused by an unruly passenger (USIRIPALLI).  The Pilot in Command made the decision to divert the aircraft to Boston Logan International Airport.  Interviews with victims[2]

---

[1] The identities of the flight crew, flight attendants, and passengers described in this Affidavit are known to law enforcement but withheld here to protect their privacy.

[2] English is neither Minor A's nor Minor B's first language.  They were interviewed with the assistance of an adult with whom they were traveling.

25-mj-1378-DLC

and witnesses provided the following information.

9.      Minor A was seated in 43D, a middle seat in the center row of the aircraft. Following the dinner service, Minor A was sleeping lightly when he awoke to see USIRIPALLI standing over him.  Minor A reflexively raised his left shoulder to create space between himself and USIRIPALLI.  Using his right hand, USIRIPALLI struck Minor A in the left clavicle area with a metal fork.  USIRIPALLI then immediately lunged over Minor A towards Minor B, who was seated to Minor A's right.  Minor A did not suffer any visible injury to his clavicle as he was wearing a heavy hooded sweatshirt.  Minor A advised that he exchanged pleasantries with USIRIPALLI during the initial boarding period and that was their only interaction prior to the assault.

10.     Minor B was seated in 43E, a middle seat in the center row of the aircraft.  Minor B was seated to the right of Minor A.  Minor B observed USIRIPALLI stab Minor A with a fork. Minor B leaned forward in his seat and USIRIPALLI lunged across Minor A and struck Minor B in the back of his head with a metal fork.  USIRIPALLI then stepped back into the aisle where he was restrained by flight crew members.  Minor B stated that USIRIPALLI was yelling unintelligibly.  Minor B suffered a laceration to the rear of his head, as depicted in Image 1 below. He was treated by EMS at the gate area upon arrival in Boston.[3]

---

[3] Because of this incident, Minor A and Minor B had to stay overnight in Boston and were not able to depart until October 26, 2025.

**Image 1**



11.      Flight Attendant 1 ("FA1") heard a commotion in the middle of the aircraft following the meal service.  FA1 observed USIRIPALLI standing over passengers seated in row 43 and moving his right arm to strike them.  FA1 could not move closer to row 43 to assist because other passengers were in his way.

12.      Flight Attendant 2 ("FA2") also heard a commotion and rushed to the middle of the aircraft.  When FA2 arrived at the area of row 43, he realized that a passenger (USIRIPALLI) was being pushed back to his seat by other members of the flight crew and another passenger.  FA2 assisted the other members of the flight crew with subduing USIRIPALLI.  While attempting to subdue USIRIPALLI, FA2 saw USIRIPALLI reach down between his legs with his right hand.  USIRIPALLI then raised his hand, formed a gun with his fingers, put it in his mouth, and pulled an imaginary trigger.  Immediately afterwards, USIRIPALLI turned to his left toward a female passenger seated in 43B and slapped her with his hand.  FA2 told USIRIPALLI to stop whereupon USIRIPALLI turned toward FA2 and tried to slap him.  USIRIPALLI's palm touched FA2's left cheek.

13.      FA2 stated that the other flight crew members handcuffed USIRIPALLI and

USIRIPALLI dropped to his knees, bent over, and tried to kiss FA2's shoes.  USIRIPALLI started mumbling things such as "Koran," "Barack and Michelle Obama," "the King," "I am a sinner in the eyes of Siddhartha," "happy times to everybody," and "I am the reason for Covid."

14.     The fork that USIRIPALLI used to attack Minor A and Minor B was recovered by investigators in a trash receptacle in the aircraft galley.  The fork was placed there by a member of the flight crew.

15.     Investigators met Flight 431 upon its arrival to Boston.  U.S. Customs and Border Protection ("CBP") Officers located and removed USIRIPALLI from the aircraft and detained him at Boston Logan Airport.[4]

16.     Investigators attempted to interview USIRIPALLI.  The interview was recorded. USIRIPALLI was mumbling unintelligibly at the start of the interview.  USIRIPALLI was advised of his *Miranda* rights, invoked them, and did not agree to speak with investigators.


*(Space Intentionally Left Blank)*

---

[4] USIRIPALLI was previously admitted to the United States on a student visa.  Most recently, he had been enrolled in a master's program studying biblical studies.  He presently does not have lawful status.

25-mj-1378-DLC

## CONCLUSION

17.     Based on the foregoing, I submit that there is probable cause to believe that, on or about October 25, 2025, USIRIPALLI, being an individual on an aircraft in the special aircraft jurisdiction of the United States while onboard Lufthansa Flight 431 en route from Chicago, Illinois to Frankfurt, Germany, did assault Minor A and Minor B with a dangerous weapon, with intent to do bodily harm, in violation of 49 U.S.C. § 46506(1) and 18 U.S.C. § 113(a)(3).

Benjamin C. Wallace
FBI Agent

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 this 27th day of October, 2025.

HON. DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE